# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 19, 2015

Plaintiff-Appellee,

v

No. 320218
Wayne Circuit Court

JAMES ANTHONY REEVES,

LC No. 13-008099-FC

Defendant-Appellant.

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to do great bodily harm less than murder, MCL 750.84, intentionally discharging a firearm at a dwelling or potentially occupied structure, MCL 750.234b, felon in possession of a firearm ("felon-in-possession"), MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. Defendant was sentenced, as a second habitual offender, MCL 769.10, to 6 to 15 years' imprisonment for each assault with intent to do great bodily harm less than murder conviction, two to six years' imprisonment for the intentionally discharging a firearm at a dwelling or potentially occupied structure conviction, 2 to 7 ½ years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a July 23, 2013 altercation between defendant and his cousin, Quintin Omar Thornton, at defendant's home in Detroit, Michigan. Thornton first visited defendant's house that morning in an attempt to either borrow or collect $200 from defendant. Defendant was drinking, and Thornton smoked some marijuana. Thornton left defendant's house after staying there for a short time.

Later that day, Thornton returned to defendant's home. Several other people were also present there. Defendant and Thornton continued to argue about the $200 and an allegation that Thornton had inappropriately touched defendant's 10- and 11-year-old stepdaughters. Ravorn Withers, a friend of defendant and Thornton, testified that Thornton was "looking distraught and stressed out" about the earlier argument, but that the situation was "calming down." As time passed, the argument between defendant and Thornton escalated again. Thornton was "swelling

-1-

up" and becoming visibly more upset. Defendant displayed a revolver, and Thornton backed down momentarily.[1]

In response to defendant showing him the gun, Thornton said, "You're going to have to use it," and told defendant that he was going to "beat his a**." Defendant responded that he would not fight Thornton, but he would shoot him. Thornton took off one of his shirts in preparation for a fight and told defendant again, "I'm going to beat your a**." Defendant then fired gunshots at Thornton. Thornton fled the home, and defendant followed him. During the incident, one of defendant's shots struck Deavonte Andrews, a 12-year-old boy who had been coloring with other children on defendant's porch.

Multiple witnesses identified defendant as the shooter and saw him holding a gun after he followed Thornton outside. Thornton failed to appear to testify at defendant's trial. However, the trial court allowed the prosecution to read Thornton's preliminary examination testimony into the record over defense counsel's objection.

## II. DEFENDANT'S BRIEF ON APPEAL

### A. SUFFICIENCY OF THE EVIDENCE

First, defendant challenges the sufficiency of the evidence underlying his convictions solely on the basis that the prosecution failed to prove beyond a reasonable doubt that defendant did not act in self-defense. We disagree.

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

We review *de novo* a challenge to the sufficiency of the evidence in a jury trial, "viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). Additionally, this Court "must resolve all conflicts in favor of the prosecution," *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997), and "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses," *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (quotation marks and citation omitted).

Self-defense is governed by common law principles and statutory provisions in Michigan and provides that an individual not engaged in the commission of a crime[2] may use deadly force,

---

[1] Thornton testified at the preliminary examination that he did not have a gun at any point during the day.

[2] A defendant charged with felon-in-possession may raise self-defense under the Self-Defense Act, MCL 780.971 *et seq.*, if evidence exists "that would allow a jury to conclude that criminal possession of a firearm was justified because the accused had an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault to himself or herself or to another." *Guarjado*, 300 Mich App at 40.

with no duty to retreat, if that individual honestly and reasonably believes that such force is necessary to prevent imminent death, great bodily harm, or sexual assault. MCL 780.972(1); see also *People v Dupree*, 486 Mich 693, 707-708; 788 NW2d 399 (2010); *People v Riddle*, 467 Mich 116, 119-121, 126-140; 649 NW2d 30 (2002); *People v Guarjado*, 300 Mich App 26, 35; 832 NW2d 409 (2013). A defendant claiming self-defense must meet "the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist." *Dupree*, 486 Mich at 709-710. "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009) (citation and quotation marks omitted).

## 2. APPLICATION

Even if we assume that defendant met his initial burden of producing some evidence from which the jury could conclude that defendant honestly and reasonably believed that deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault, see MCL 780.972(1); *Dupree*, 486 Mich at 707-708; *Guarjado*, 300 Mich App at 35, the prosecution presented significant evidence that disproved the defense, see *Terry*, 224 Mich App at 452.

At trial, no witnesses testified that Thornton had a gun or did anything other than verbally threaten defendant with a beating. Instead, the only evidence suggesting that Thornton had a gun was (1) testimony from Andrews' mother indicating that defendant told her after the incident that Thornton had a gun and (2) testimony from a police officer indicating that defendant's stepdaughters initially, and inconsistently, told her that Thornton had a gun, but the stepdaughters later acknowledged that they were not present at the incident. The evidence at trial indicated that defendant pulled out a gun in response to Thornton's verbal threats, that defendant told Thornton that he was going to shoot him, that Thornton was unarmed, that defendant continued to fire at Thornton after he ran away, and that Thornton sustained injuries in his legs and back. On this record, especially when viewed in the light most favorable to the prosecution, *Gaines*, 306 Mich App at 296, we cannot conclude that the prosecution failed to disprove the defense of self-defense beyond a reasonable doubt, *Roper*, 286 Mich App at 86.

## B. "NO DUTY TO RETREAT" INSTRUCTION

Defendant next contends that the trial court's failure to instruct the jury, *sua sponte*, that defendant had no duty to retreat unfairly affected the outcome of the trial because it led the jury to conclude that defendant could have run away from Thornton. We disagree.

Defense counsel's express approval of the jury instructions, both before and after the trial court instructed the jury, constitutes waiver of this issue. See *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any

error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Thus, we decline to review this issue.[3]

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his counsel provided ineffective assistance by failing to call witnesses and by failing to request a "no duty to retreat" jury instruction. We disagree.

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

Defendant preserved this issue by moving in the trial court for a new trial or, alternatively, for a *Ginther*[4] hearing. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). However, because the trial court denied defendant's motion for a *Ginther* hearing, our review is limited to mistakes apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) defendant was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). In addition, a defendant carries the burden of establishing the factual basis of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"Effective assistance of counsel is presumed," and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Likewise, a defendant "must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id*. at 411. This Court "will not substitute [its] judgment for that of counsel on matters of trial strategy, nor will [it] use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

---

[3] Nevertheless, as discussed *infra* in Part II.C.3, we conclude that there is not a reasonable probability that the trial court's failure to provide the instruction, and defense counsel's failure to object to the omission of the instruction, affected the outcome of the proceedings. See *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## 2. FAILURE TO CALL WITNESSES

There is no basis for concluding that defense counsel's failure to call witnesses constituted ineffective assistance of counsel.

First, defendant asserts that defense counsel's performance fell below an objective standard of reasonableness because he "recognized the possibility that . . . witnesses could provide testimony beneficial to defendant," but failed to interview and call them at trial in support of defendant's self-defense theory. However, defendant identifies nothing in the record indicating that defense counsel did, in fact, fail to interview witnesses or fully investigate the case. See *Jordan*, 275 Mich App at 667. Thus, defendant has failed to establish the factual predicate of his claim. See *Hoag,* 460 Mich at 6.

Next, defendant asserts that counsel was ineffective because he failed to call the Clerk of Wayne Circuit Court to introduce a certified record of Thornton's prior felony convictions of assault with intent to do great bodily harm, felony-firearm, and second-degree home invasion. According to defendant, this evidence would have supported defendant's defense theory of self-defense by demonstrating that "he honestly and reasonably believed that [Thornton] intended to cause serious injury or death."

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense," *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted), which is a defense that could have made a difference in the trial's outcome, *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defendant identifies no case law or reasoning demonstrating that the Clerk's testimony or a certified record of Thornton's convictions would have been admissible in this case. Additionally, there is no record evidence demonstrating that the Clerk would—or could—provide testimony regarding Thornton's purported convictions, or that a certified record would have included the specified convictions alleged by defendant on appeal. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Payne*, 285 Mich App at 196. Due to this failure to demonstrate that the evidence would have been admissible, defendant has necessarily failed to establish that there is a reasonable probability that the outcome of the proceeding would have been different but for defense counsel's purported error. See *Vaughn*, 491 Mich at 669-671.

Moreover, because it appears that this evidence would have been for the sole purpose of demonstrating Thornton's propensity for violence based on his prior convictions, and defendant identifies no proper purpose for admitting the evidence in his brief on appeal, we conclude that

the evidence would have been inadmissible to support of defendant's self-defense claim.[5] Defense counsel's failure to request the admission of inadmissible evidence does not constitute ineffective assistance. See *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Finally, it is apparent from the record that defense counsel's failure to call witnesses did not deprive defendant of the opportunity to present a self-defense theory at trial. See *Payne*, 285 Mich App at 190.

Thus, defendant has failed to demonstrate that defense counsel provided ineffective assistance of counsel based on his failure to call any witnesses.

### 3. FAILURE TO REQUEST A "NO DUTY TO RETREAT" JURY INSTRUCTION

Likewise, defendant has failed to establish that defense counsel provided ineffective assistance when he failed to request a jury instruction stating that an individual does not have a duty to retreat if he is faced with death or serious bodily injury in his own home. See M Crim JI 7.16.[6]

A criminal defendant has the right to have a properly instructed jury consider the evidence against him or her. *Wood*, 307 Mich App at 519. "This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred." *Id*. "The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Id*. "Even when somewhat imperfect, jury instructions do not qualify as erroneous provided that they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights." *Id*.

Here, there is not a reasonable probability that the outcome of the trial would have been different but for defense counsel's failure to request a "no duty to retreat" instruction. See *Vaughn*, 491 Mich at 669-671. Before the jury could consider whether defendant had a duty to retreat, it had to determine that defendant "honestly and reasonably believe[d] that he [was] in imminent danger of death or serious bodily harm." *Riddle*, 467 Mich at 121 n 11; see also MCL 780.972; MCL 780.973; *Riddle*, 467 Mich at 119-121, 128-140; *People v Conyer*, 281 Mich App 526, 530 n 2; 762 NW2d 198 (2008). Apart from (1) testimony from Andrews' mother that defendant initially told her after the incident that Thornton fired gunshots at him and (2) testimony from a police officer that defendant's stepdaughters indicated that Thornton fired gunshots at defendant (which was later undermined by inconsistencies in their statements to the officer and an admission that they were outside during the shooting), there is no evidence in the record suggesting that defendant honestly and reasonably believed that he was in danger of death

---

[5]See MRE 404 (prohibiting the use of character or other acts evidence to prove action in conformity therewith except under certain circumstances); MRE 608; MRE 609; *Roper*, 286 Mich App at 91. We find most significant the fact that defendant provides no explanation regarding how evidence of Thornton's prior crimes was relevant to a proper, noncharacter purpose.

[6] Defendant cites CJI2d 7.16, which is now M Crim JI 7.16.

or serious bodily injury, such that he reasonably believed that deadly force was necessary under the circumstances. The overwhelming majority of the testimony at trial shows that defendant shot at Thornton after he made verbal threats and took his shirt off. In light of this evidence, defendant's use of deadly force was grossly disproportionate to Thornton's conduct. See *Riddle*, 467 Mich at 120 ("[R]egardless of the circumstances, one who is attacked in his dwelling is *never* required to retreat where it is otherwise *necessary* to exercise deadly force in self-defense." [Second emphasis added.]); see also *id*. at 121 n 11.

Further, the trial court provided a general self-defense instruction, which was virtually identical to M Crim JI 7.15. Thus, even without a "no duty to retreat" instruction, the general self-defense instruction required the jury to determine whether defendant acted honestly and reasonably in protecting himself. In addition, the trial court properly instructed the jury on the elements of the offenses, the presumption of innocence, the prosecution's burden of proof, the definition of reasonable doubt, defendant's right to remain silent, and the fact that the jury could find defendant guilty of lesser defenses.

Thus, we conclude that the court's instructions fairly presented the issues to the jury, the instructions adequately protected defendant's rights, see *Wood*, 307 Mich App at 519, and there is not a reasonable probability that requesting the no-duty-to-retreat instruction would have resulted in a different outcome, see *Vaughn*, 491 Mich at 669-671. Defendant has failed to establish ineffective assistance of counsel on this basis.

## D. THORNTON'S PRIOR TESTIMONY

Finally, defendant contends that Thornton's prior testimony was inadmissible because it violated his constitutional right of confrontation, as defendant lacked a similar motive or opportunity to cross-examine Thornton at the preliminary examination. We disagree.

## 1. STANDARDS OF REVIEW AND APPLICABLE LAW

We review *de novo* the constitutional question of whether a defendant was denied the right to confront a witness against him. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "This Court reviews for an abuse of discretion the trial court's decision to admit or exclude evidence." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "[A] trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (footnotes omitted). Additionally, we review *de novo* "the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *Id*.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI; see also Const 1963, art 1, § 20. Generally speaking, the Confrontation Clause bars the admission of a witness's testimonial statements if the witness does not appear at trial unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Likewise, we have recognized that a trial court may admit former testimony "at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App

1, 7; 777 NW2d 732 (2009), citing *Crawford*, 541 US 36. In particular, MRE 804(b)(1) provides that an unavailable witness's prior testimony is admissible at trial "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." With regard to this issue, the parties do not dispute that Thornton was an unavailable witness and that Thornton's preliminary examination testimony was testimonial.

"Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). This Court has identified the following factors in determining whether a party had a similar motive to examine a witness at a prior proceeding:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. at 278 (quotation marks omitted).]

The right to cross-examination is not without limits, and a defendant does not have "an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). However, a defendant is "guaranteed a reasonable opportunity to test the truth of a witness' testimony." *Id*.

### 2. APPLICATION

The record does not support defendant's claim that his right of confrontation was violated because the defense did not have a similar motive or opportunity to cross-examine Thornton. On appeal, defendant's claim rests on two facts: (1) the defense did not receive a copy of the transcript of the prosecution's interview with Thornton pursuant to an investigative subpoena before the preliminary exam, which, according to defendant, was necessary to impeach Thornton with prior inconsistent statements, and (2) defense counsel advised the trial court that he did not have an opportunity at the preliminary exam to impeach Thornton with his theft and assault with intent to do great bodily harm convictions. We find no basis in the record for concluding that either of these rationales demonstrates a violation of defendant's right of confrontation.

Defendant does not identify any specific disparities between Thornton's testimony pursuant to the investigative subpoena and his testimony at the preliminary examination that he would have raised at the preliminary examination in order to impeach Thornton's testimony. A "[d]efendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001).

Additionally, contrary to defendant's claims on appeal, our review of the record confirms that, in fact, defendant did have a prior opportunity to cross-examine Thornton, and that defendant had a motive similar to that at trial when he cross-examined Thornton at the preliminary examination, thereby fulfilling the requirements of MRE 804(b)(1). Although different burdens of proof apply at the preliminary examination and trial stages, the defense had

a similar motive to cross-examine Thornton at the preliminary examination because the prosecution presented his testimony for the same reason as it did at trial—to show that defendant committed the charged offenses. Further, the purpose of the preliminary examination was "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986) (quotation marks and citation omitted). Additionally, at the preliminary examination, defense counsel extensively cross-examined Thornton on a wide range of subjects, including whether defendant actually owed him money, whether defendant had kicked Thornton out of the house the previous weekend, Withers' potential bias, Thornton's intent to assault defendant, and the details of the shooting.

In light of this, defendant fails to state what additional points he may have raised had he received a transcript of the investigative subpoena hearing, and he also fails to establish that he lacked a reasonable opportunity to test the truth of Thornton's testimony. See *Adamski*, 198 Mich App at 138. Thus, we conclude that the requirements of MRE 804(b)(1) have been fulfilled in this case, and"[b]ecause MRE 804(b)(1) is a hearsay exception firmly rooted in American jurisprudence," compliance with the rule in admitting Thornton's former testimony fulfilled the requirements of the Confrontation Clause. *People v Adams*, 233 Mich App 652, 659-660; 592 NW2d 794 (1999), citing *People v Meredith*, 459 Mich 62, 67-71; 586 NW2d 538 (1998).

Furthermore, with regard to Thornton's alleged convictions, defendant has failed to demonstrate that the convictions were admissible for impeachment purposes. MRE 609 governs defendant's ability to impeach a witness with evidence of a prior criminal conviction. Notably, the rule does not permit admissibility of *any* prior conviction. MRE 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and
>
> > (1) the crime contained an element of dishonesty or false statement, or
> >
> > (2) the crime contained an element of theft, and
> >
> > (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and
> >
> > (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

Thus, it is clear that a conviction for assault with intent to do great bodily harm is not admissible for impeachment purposes. See MRE 609(a). Likewise, even if we assume that Thornton does, in fact, have a prior theft conviction, defendant has not argued or provided any factual support for concluding that the crime was punishable by imprisonment of more than one year or death, see MRE 609(a)(2)(A), or that it fulfilled the time limit requirements under MRE 609(c). Thus,

on this record, we have no basis for concluding that defendant could, in fact, have impeached Thornton with his prior convictions at the preliminary examination.

Finally, it is important to recognize that "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (quotation marks and citation omitted; alteration in original). As such, the trial court did not abuse its discretion in admitting Thornton's preliminary examination testimony. See MRE 804(a)(2), (a)(5), (b)(1). Likewise, the admission of Thornton's preliminary examination testimony did not violate defendant's constitutional right to confront a witness against him because Thornton was unavailable and defendant had an opportunity to meaningfully cross-examine Thornton at the preliminary examination. See *Garland*, 286 Mich App at 7.

### III. STANDARD 4 BRIEF

Defendant raises numerous additional claims in a brief filed *in propria persona* pursuant to Administrative Order 2004-6, Standard 4. We have reviewed defendant's arguments in detail and find them to be meritless. Nevertheless, we will briefly address each of defendant's claims.

### A. REQUEST FOR SUBSTITUTE COUNSEL

First, defendant contends that the trial court abused its discretion by denying his request for substitute counsel and failing to conduct an evidentiary hearing on the matter, arguing that there was a breakdown in the attorney-client relationship with defense counsel, that counsel refused to file motions on his behalf, and that counsel failed to properly investigate the case or consult with him about it. See *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). Defendant is not entitled to relief.

The record shows that there was no factual dispute that would have required an evidentiary hearing on this issue in the trial court. See *Strickland*, 293 Mich App at 397 ("When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, *if there is a factual dispute*, take testimony and state its findings and conclusion on the record." [Quotation marks and citation omitted; emphasis added.]). Additionally, defendant's statements in the trial court indicating his general lack of confidence in counsel, his unhappiness with defense counsel's communication with him and his family weeks before trial, and unhappiness with counsel's unwillingness to file certain unspecified motions does not constitute a showing of good cause. See *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973); *People v McFall*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 318830); slip op at 3; *Strickland*, 293 Mich App at 398; *Traylor*, 245 Mich App at 462.

Also, "a defendant's conviction will not be set aside, even in the absence of judicial consideration of the defendant's allegation, if the record does not show that the lawyer assigned to represent [the defendant] was in fact inattentive to his [or her] responsibilities." *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (quotation marks omitted; alteration in original), quoting *Ginther*, 390 Mich at 442. Our review of the record confirms: (1) that defense

counsel requested an adjournment to allow defendant to pursue a retained attorney; (2) that he showed a willingness to take on defendant's other cases in the interest of obtaining a better overall outcome for defendant; (3) that defense counsel corresponded with three different prosecutors regarding plea agreements pertaining to all of the cases; (4) that he vehemently attacked the prosecution witnesses' credibility and recall at trial; (5) that he presented a self-defense theory; and (6) that he extensively challenged the admission of Thornton's preliminary examination testimony. Based on the record, we cannot say that defense counsel was inattentive to his responsibilities.

Thus, we reject defendant's claim and conclude that neither remand for an evidentiary hearing nor reversal is required on the basis of defendant's request for substitute counsel in the trial court.

## B. INVESTIGATIVE SUBPOENA TRANSCRIPTS

Defendant next contends in his Standard 4 brief that the prosecutor withheld the transcript of Thornton's statements pursuant to an investigative subpoena and that this is in violation of MCL 767A.5, that the trial judge violated the same statutory provision by failing to order the prosecutor to produce the transcript, and that defendant's constitutional due process rights were thereby violated. We disagree and conclude that this unpreserved claim does not constitute a plain error affecting defendant's substantial rights. See *People v Cain*, ___ Mich ___, ___ n 4, ___; 498 NW2d 108 (2015) (Docket No. 149259); slip op at 6 n 4, 9.

Defendant's claim that the prosecution did not provide the investigative subpoena transcript until the second day of trial is not supported by the record. Rather, the record clearly indicates that the defense received the transcript along with other discovery materials on the morning of defendant's arraignment, and that defense counsel was quoting the preliminary examination transcript on the second day of trial when he stated that he had not been supplied with the investigative subpoena transcript.

Moreover, given that the prosecution provided the transcript several weeks before defendant's trial date, we find no basis for concluding that the prosecution or the trial court violated MCL 767A.5 or defendant's due process rights. In fact, the prosecutor provided a transcript of the investigative subpoena testimony almost three months before MCL 767A.5 would have required her to do so if defendant had, in fact, made a motion as required under MCL 767A.5(6), which did not occur in this case. See MCR 6.201; MCL 767A.5(6); *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 447 n 4; 722 NW2d 254 (2006) ("Moreover, due process requires only that the prosecution provide a defendant with material, exculpatory evidence in its possession."); *People v Pruitt*, 229 Mich App 82, 87; 580 NW2d 462 (1998). Likewise, for the same reasons, we perceive no basis for finding a violation of defendant's constitutional right to present a defense. See *People v Yost*, 278 Mich App 341, 379-380; 749 NW2d 753 (2008), citing US Const, Am VI; Const 1963, art 1, § 20.

## C. JUDICIAL BIAS

Defendant also contends that the trial judge's "failure" to order the prosecution to provide Thornton's investigative subpoena transcript was an error so grievous that it allowed his

subsequent trial to be conducted by a biased and partial decision-maker. However, the trial judge had no duty to order the prosecutor to provide the transcript because defense counsel never moved for receipt of the transcript under MCL 767A.5(6).[7] Defendant identifies no other basis for a finding of judicial bias, nor does he present any other evidence that overcomes the heavy presumption that the trial judge was fair and impartial. See *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). Accordingly, we reject defendant's claim.

### D. PROSECUTORIAL MISCONDUCT

Next, defendant raises numerous, unpreserved claims of prosecutorial misconduct. See *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010). Defendant has failed to establish that any of these claims constitute plain error affecting defendant's substantial rights. See *id*.

First, all of defendant's claims of prosecutorial misconduct are unsupported by the record. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claim[] . . . ." *Payne*, 285 Mich App at 195.

Moreover, "[t]he test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). Defendant fails to specifically describe how the outcome of his trial was affected by the purported instances of prosecutorial misconduct. Instead, defendant asserts "that this Court should conduct a taint hearing to determine the extent of prejudice that permeated [defendant's] criminal proceedings, and which was committed at the hands of the [p]rosecution by and through fabrication and misrepresentation of critical evidence throughout [defendant's] trial."[8]

---

[7] Even if we assume, arguendo, that defense counsel's single comment regarding the transcript's absence could be construed as a motion under MCL 767A.5(6), such that the court erred by not directing the prosecutor to provide the transcript, this single error did not display "deep-seated favoritism or antagonism such that the exercise of fair judgment [was] impossible." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (citation and quotation marks omitted).

[8] We reject defendant's claim that the prosecutor's conduct warrants a "taint hearing." The federal cases on which defendant relies are inapposite here because they involve situations were a defendant testified under a grant of immunity and was subsequently prosecuted. In those cases, the prospect of a "taint hearing" was raised to ensure that the prosecution had legitimate, independent evidence of the defendant's guilt. See, e.g., *Kastigar v US*, 406 US 441, 459; 92 S Ct 1653; 32 L Ed 2d 212 (1972); *US v De Diego*, 511 F2d 818 (CA DC, 1975). None of those circumstances are present in this case, and defendant identifies no authority indicating that a "taint hearing" is proper in Michigan for the sole purpose of investigating allegations of prosecutorial misconduct.

Defendant has failed to establish the requisite prejudice to demonstrate a plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In addition, defendant provides no basis for finding that the purported instances of misconduct "resulted in the conviction of an actually innocent defendant or [constituted] error[s that] seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

Thus, we reject defendant's claims of prosecutorial misconduct.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends that defense counsel provided ineffective assistance. We disagree.

### 1. FAILURE TO OBJECT

First, defendant argues that defense counsel provided ineffective assistance by failing to object to the trial court's erroneous rulings and the prosecutor's alleged due process violation. As discussed *supra*, neither the prosecution nor the trial court committed a due process violation in association with the investigative subpoena transcript. Defense counsel is not required to make a meritless objection. *Chelmicki*, 305 Mich App at 69. Additionally, consistent with our conclusion above regarding defendant's substitution of counsel claim, there is no indication that defendant was prejudiced by the trial court's ruling regarding his request for substitute counsel, as the record clearly shows that defense counsel was attentive to his responsibilities and vigorously defended defendant throughout the proceedings. See *Buie*, 298 Mich App at 67.

Defendant identifies no other instances during which defense counsel failed to make a valid objection, nor does he address how defense counsel's "failures" in this regard prejudiced him at trial, other than to allege that the errors were so egregious that we should presume prejudice. There is no basis for concluding that a presumption of prejudice is appropriate in this case. Contrary to defendant's claim on appeal, there simply is no indication that defendant was completely denied counsel at a critical stage in the proceedings. See *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), citing *US v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984). In addition, we conclude that defendant has failed to establish the factual predicate of his claim, *Hoag*, 460 Mich at 6, and failed to establish the requisite prejudice for a finding of ineffective assistance, *Vaughn*, 491 Mich at 669-671.

### 2. FAILURE TO INVESTIGATE THE CASE

Next, defendant argues that defense counsel provided ineffective assistance by failing to properly investigate the case. Although "[f]ailure to make a reasonable investigation can constitute ineffective assistance of counsel," *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005), defendant does not identify any specific way in which defense counsel failed to reasonably investigate. Thus, defendant has failed to establish the factual predicate for his claim. See *Hoag*, 460 Mich at 6.

### 3. FAILURE TO CONSULT WITH DEFENDANT

-13-

Additionally, defendant argues that defense counsel failed to consult with defendant regarding his case.

Defense counsel is required to consult with a criminal defendant on "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal[,]" but counsel need not consult with his or her client about every tactical decision. *Florida v Nixon*, 543 US 175, 187; 125 S Ct 551; 160 L Ed 2d 565 (2004) (quotation marks and citations omitted). Defendant does not contend that counsel failed to consult with him on these important matters. Instead, he asserts that counsel was ineffective because he only visited him once in jail. Defendant stated at the October 30, 2013 motion hearing, which was more than seven weeks before trial, that defense counsel had only paid him a single visit in jail. However, there is no indication that counsel failed to consult with defendant between the hearing and the trial. Defendant appeared in court several more times before trial, raised additional complaints about counsel, but he never raised any more complaints regarding their level of communication. Thus, defendant has failed to establish the factual predicate of his claim, see *Hoag*, 460 Mich at 6, and we perceive no basis for concluding that defense counsel's performance fell below an objective standard of reasonableness, *Vaughn*, 491 Mich at 669-671. Again, contrary to defendant's claim, a presumption of prejudice is not appropriate in this case, as the record does not show that "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 US at 659 n 25; see also *Frazier*, 478 Mich at 243-244.

## 4. CONFLICT OF INTEREST

Finally, defendant asserts that defense counsel provided ineffective assistance by continuing to represent defendant despite a clear conflict of interest arising from the fact that defendant reportedly filed a grievance against defense counsel with the Attorney Grievance Commission.

A defendant claiming ineffective assistance based on a conflict of interest must show that "an actual conflict of interest adversely affected his lawyer's performance," *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998) (quotation marks and citation omitted), and the mere act of filing a grievance against one's attorney does not necessarily establish an actual conflict of interest, see *Traylor*, 245 Mich App at 463. There is not an "automatic correlation between an attorney's theoretical self-interest and an ability to loyally serve a defendant." *Smith*, 456 Mich at 557. Here, there is nothing in the record showing that "counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id*. (citation and quotation marks omitted). Thus, we reject defendant's claim.

## F. CUMULATIVE ERROR

Finally, defendant contends that the cumulative effect of errors by the trial court, the prosecution, defense counsel, and appellate counsel deprived him of a fair trial. In making this argument, defendant simply relies on the alleged errors considered *supra*. He identifies no particular error committed by his appellate counsel. Given our conclusions that defendant's claims of error have no merit, there is no possible cumulative effect warranting reversal. See *Gaines*, 306 Mich App at 310 ("[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument."); *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370

(1999) ("Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found.").

## IV. CONCLUSION

Defendant has failed to establish that any of the claims of error raised in his brief on appeal and Standard 4 brief warrant relief. Likewise, we reject defendant's claim that an evidentiary hearing is necessary in this case "to complete the existing record."[9]

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

---

[9] Defendant failed to file a proper motion for remand, MCR 7.211(C)(1)(a), and failed to sufficiently identify any issues with regard to which further development of a factual record is necessary for appellate consideration. MCR 7.211(C)(1)(a)(*ii*). He also failed to support his request for an evidentiary hearing with an affidavit or other offer of proof specifying the facts that would be established at such a hearing. MCR 7.211(C)(1). Furthermore, the federal authority on which defendant relies pertains to *habeas* petitions in federal court and is not applicable to the instant case.